## Supreme Court, General Term, First Department.

### *January,* 1888.

### PEOPLE *v.* McGRATH.

SELF-DEFENSE.—RIGHTS AND DUTIES OF ONE WHO IS AS-
SAULTED.—EVIDENCE AS TO OTHER CRIMES.

Where the defendant was himself the cause of the assault made upon
him, and intentionally provoked it, he cannot afterward excuse
himself for inflicting needless violence on the person of the other
party.

To justify blows, as given in self-defense, there must be some reason-
able or apparent necessity for them in defense or protection.

A defendant, after he has been sworn and examined in his own be-
half, may on cross-examination be interrogated as to distinct
acts of criminality or misconduct tending to throw discredit on
his testimony.

APPEAL by defendant John McGrath from a judgment
of the Court of General Sessions of New York City and
County, entered upon a conviction of manslaughter in the
second degree.

*Adolphus D. Pape,* for defendant, appellant.

*John R. Fellows,* district attorney, for the people, re-
sondents.

DANIELS, J.—The defendant was convicted of the crime
of manslaughter in the second degree, under section 193 of
the Penal Code. The offense was committed in a saloon on
the 25th of October, 1886. The defendant was of the age
of twenty-three years, while John McKeagney, the person
who was killed, was of the age of fifty-four years. Evidence
was given upon the trial from which the jury could very
well find that McKeagney was in conversation with another

person in the saloon, and made remarks in the hearing of the defendant which were offensive to him. He then, without any conversation with the deceased, replied in a still more offensive manner to those remarks, and the deceased then said to him, after the remarks had been repeated and the defendant had approached him, "If you will say that again, old man as I am, I will strike you." Then the evidence tended to show that the defendant opened his mouth and McKeagney struck him with his fist over the right eye. The defendant testified that he struck him twice. The proof tended to show that the defendant immediately struck McKeagney with his hand, and then turned around and hit him under the right jaw, knocking him down, and his head struck upon the floor. He struck with so much violence as to fracture his skull, and became at once unconscious, and remained in that condition until he died, about the hour of seven o'clock on the following morning. His death was caused by compression of the brain from hemorrhage.

It has been earnestly contended by the counsel for the defendant that he was justified in striking McKeagney as he did, inasmuch as the latter was the first aggressor in the blows which were given. But the jury could very well find from the evidence laid before them that there was no necessity for the defendant striking McKeagney, and that he invited or brought the occasion upon himself, which was made the excuse of the blows given by him to the deceased. There was no absolute disposition on his part to strike the defendant, but he expressed his intention to do so only in case the latter repeated the remark he had previously made. There was not the slightest reason or necessity for that repetition. He would naturally understand from what was said that there was no disposition to strike him unless he did repeat the offensive language he had previously used. He was fully made aware of what the inclination of the deceased was, and that he was in no danger of the least act of violence from him unless he, himself, repeated the preceding aggravation, and in that manner invited or occasioned the blows

he received and which were made the excuse for returning
those inflicted upon McKeagney. What he seems to have
desired was to obtain an excuse for striking this man who
was so much older than himself as probably to be an unequal
match for him. He had no reason for fear or apprehension.
And if he had not aggravated the deceased by opening his
mouth, and in that manner showing a disposition to repeat
the words, no striking would have probably have taken place
between these persons. And when the defendant himself
may be the cause of the assault made upon him, and has in-
tentionally provoked it, he cannot afterward excuse himself
for inflicting needless violence upon the person of the other
party. What the law requires to justify a person beating
another, as the defendant did McKeagney, is that the beating
shall appear to be necessary for his own defense and protec-
tion. Elliott v. Brown, 2 *Wend.* 497; Scribner v. Beach, 4
*Den.* 448; Keyes v. Devlin, 3 *E. D. Smith,* 518; Shorter v.
People, 2 *N. Y.* 193; People v. Sullivan, 7 *N. Y.* 396.

There was no occasion or necessity, as these authorities
require, for the striking of McKeagney by the defendant and
as would excuse the act upon the ground of self-defense.
At least the case was very properly one for the jury upon
the evidence stating the transaction which had taken place.

Exceptions were taken to certain portions of the charge
given by the judge presiding at the trial, and to refusals to
charge requests presented upon behalf of the defendant.
The first request made was charged, that words themselves
create no justification for a personal assault. And so was
the second, within the qualification, well supported by the
authorities, that there must have been some reasonable
or apparent necessity for the blows given by the defendant,
to justify them on the grounds of self-defense. So was the
third substantially charged, that when a man is in a corner,
or at the wall, if assaulted, he may strike back, and he is
not obliged to wait until he had been struck the second
blow before resorting to the right of self-defense. So was
the sixth request charged, that if the defendant was justified

in striking the deceased he was not answerable for the acci-
dental consequences.   The request as to the presumption of
innocence was charged as the law required it to be.   And
so were the legal provisions of the Penal Code declaratory
of the cases in which homicide may be justified on the
ground of self-defense.   The case was very fully submitted
by the charge to the jury, and they were required to deter-
mine for its proper disposition whether the defendant struck
the deceased without fault.   And they were left at liberty
to consider the relative strength and age of the parties, their
relative positions, and whether there was any necessity, real
or apparent, for striking the blows which resulted in the
death of the deceased.

In striking the deceased he was not answerable.

Neither one of the exceptions taken to the charge, or the
refusals to charge which, in the argument, have been brought
to the consideration of the court, seems to have been well
taken.

In addition to these exceptions, others were taken to
questions, which the defendant was required to answer upon
his cross-examination.   He was asked whether he had ever
committed any other assault, and stated that he had once or
twice; and whether he had committed assaults for which
the police had arrested him.   This was objected to in the
most general words, and an exception taken to the ruling
allowing the question to be answered.   A similar objection
and exception were taken to the question whether he had
committed an assault for which Officer Loonum had arrested
him, and those objections and exceptions have been relied
upon as properly taken upon the trial.   It has been argued
on behalf of the defense that evidence of his arrest should
not have been received.   The court did not design to receive
evidence of mere arrests but to limit the testimony to the fact
of assaults having been previously made upon other persons
by the defendant, for it was stated in reference to one of the
answers that the evidence given as to the arrest for the assault
should be stricken out.   And that probably would have been
the disposition of the portion of the answer inquiring whether

he had committed other assaults for which he had been arrested, if that had in like manner been brought to the attention of the court. But it was not. And so much of the question which was objected to as included the inquiry whether he had committed previous assaults was legally received by the court.

This proposition, however, has been controverted by the defendant's counsel, and the cases of People *v.* Crapo, 76 *N. Y.* 288, and People *v.* Gibbs, 93 *N. Y.* 470; 1 *N. Y. Crim. Rep.* 472, have been cited as sustaining the correctness of this position of the defendant's counsel. But they failed to do that. In the first of these cases the inquiry was made of the defendant on his cross-examination whether he had not been arrested on a charge of bigamy, which is essentially different from the questions which were asked the present defendant concerning the commission of these preceding assaults. In the other case, the evidence considered to be improper was proof given on behalf of the prosecution to show that the defendant had committed another assault at a different time and place and upon a different person, and that was held to be improper. But in People *v.* Casey (72 *N. Y.* 393), it was decided that the defendant, after he had been sworn and examined as a witness in his own behalf, might be interrogated as to distinct acts of misconduct and criminality on his part tending to throw discredit upon his testimony.

And that was the object with which these questions were asked and answered. And, as the court announced, the answers were distinctly received for the purpose of affecting his credit as a witness. And no other use of this evidence was at any time made in the case, but in the submission of it to the jury they were directed to consider the evidence of good character produced on behalf of the defendant, and also that obtained in this manner as tending to affect his character and to exhibit it to have been bad. There was no error arising upon the trial which would justify a reversal of this judgment. And as the verdict of

Opinion of General Term.

the jury was well supported by the evidence, both the judgment and the denial of the motion for a new trial, upon the disposition of which no order seems to have been entered, should be affirmed.

VAN BRUNT, P. J., and BRADY, J., concur.

NOTE.—For cases on self-defense, see People *v.* Cignarale, *ante*, p. 82; People *v.* Lyons, *ante*, p. 105; People *v.* Reich, *ante*, p. 147; and especially see an elaborate note on this question, *ante*, p. 119.

That on cross-examination of defendant, criminal acts, tending to impeach the moral character or credibility of the witness may.be inquired into, but not mere accusations of such act, is held in People *v.* Irving, 2 *N. Y. Crim. Rep.* 171, affirming *Id.* 47.

It is a general rule of law that upon the trial of the defendant for one offense, it is improper to prove that he has committed other offenses, but it may be shown that as bearing upon the guilt of defendant that defendant at a time not too far distant made an attempt to commit the crime for which he is on trial. (It is needless to say this refers to the direct evidence of the prosecution.) People *v.* O'Sullivan, 5 *N. Y. Crim. Rep.* 235.

For the English law of self-defense, see *Stephens Digest of Criminal Law*, art. 200, where the law in England is given, together with criticism of some well-known cases from Hale and Hawkins. This article is too long to be here given in full, but is worthy of attentive reading.