Ciparick, J. (dissenting).
Because Supreme Court erred as a matter of law when it denied suppression of a lineup identification procedure conducted after an illegal arrest made in violation of Payton v New York (445 US 573 [1980]) and in the absence of counsel, I respectfully dissent.
Defendant was charged with two unrelated robberies, which were tried jointly. Both victims testified as to lineup procedures. One victim made an in-court identification of defendant as the perpetrator. Defendant was convicted of one count of first degree robbery and the jury hung on the charges related to the second robbery.
Prior to trial, defendant moved to suppress evidence of the lineup procedure and any prospective in-court identification by the two complainants. The issues of probable cause, the legality of the arrest, and the suggestiveness of the identification procedures employed by the police—both the photo array and the resulting lineup—were the subject of a combined Dunaway/ Payton/Wade hearing conducted by Supreme Court.
The hearing court made certain findings which are undisturbed by the Appellate Division. Supreme Court first found that there existed probable cause to make the arrest because defendant had been identified by both witnesses at separate photographic identification procedures. Second, the court found that the warrantless, nonconsensual entry into defendant’s home to effect his arrest constituted an intentional Payton violation. Third, it concluded that neither the photo identification procedures nor the lineup were unduly suggestive. Finally, the court concluded that the lineup identifications were sufficiently attenuated from the illegal arrest and on that basis denied suppression.
*246 It is well settled that under both the Federal and State Constitutions, the right to counsel attaches upon the commencement of criminal proceedings. In New York, however, CPL 120.20 requires an accusatory instrument to be filed before an arrest warrant may issue. Thus the indelible right to counsel attaches when an arrest warrant issues (see People v Harris, 77 NY2d 434, 440 [1991]). Here, the warrantless arrest of defendant resulted in a violation of his state constitutional right to counsel, which is “far more expansive than the Federal counterpart” (People v Bing, IQ NY2d 331, 339 [1990] [citations omitted]). To deter police from circumventing this right to counsel by bypassing the warrant procedure and illegally arresting a defendant in his home, we have traditionally employed the sanction of the exclusionary rule, precluding the admission of evidence acquired as a result of such a violation (see Harris, 77 NY2d at 440). Were this evidence to consist of incriminating statements made by defendant after a Payton violation, the majority would agree under Harris that such statements would be subject to suppression if the taint were not sufficiently attenuated.
Defendant asks us to apply this same rule in the context of identification evidence—here a lineup—procured as a result of an illegal arrest. In effect, defendant requests that we extend our holding in Harris to apply to these circumstances. Harris addressed the suppression of a statement elicited after a Payton violation, and we held that the exclusionary rule applied. Defendant posits that there is no logical reason to conclude that a different result is warranted when the right to counsel at a lineup is thwarted—as here by means of a Payton violation—as opposed to when a similar violation occurs at a custodial interrogation. To adopt any other rule, defendant contends, is inconsistent with the rationale of Harris. I agree.
The rule proposed by the People and adopted by the majority today shifts the emphasis from the illegal warrantless entry into a person’s home to a probable cause analysis. It employs the balancing test of deterrent effect against impact upon the truth-finding process and finds in favor of the truth-finding process, creating a distinction—warranting a different result from Harris—“between the role of counsel at a custodial interrogation compared to a lineup” (majority op at 243).
We have characterized the right to counsel as “a matter of singular concern in New York” (Harris, 77 NY2d at 439). It “is a ‘cherished principle’ worthy of the ‘highest degree of [judicial] *247 vigilance’ ” (People v Ramos, 99 NY2d 27, 32 [2002] [citations omitted]). Where we have previously determined that counsel is constitutionally required, the relative degree of significance of that role—at a lineup as opposed to during police interrogation—is simply irrelevant.
We have recognized “that the application and scope of the exclusionary rule is ascertained by balancing the foreseeable deterrent effect against the adverse impact of suppression upon the truth-finding process” (People v Drain, 73 NY2d 107, 110 [1989], citing People v Harris, 72 NY2d 614, 621-622 [1988]; People v McGrath, 46 NY2d 12, 21 [1978]; People v Boodle, 47 NY2d 398, 404 [1979]). However, “various constitutional rules limit the means by which government may conduct this search for truth in order to promote other values embraced by the Framers and cherished throughout our Nation’s history” (James v Illinois, 493 US 307, 311 [1990]). That the lineup was conducted in violation of defendant’s right to counsel necessarily cuts against any potential benefit to the truth-seeking function. The majority’s holding balances these values in favor of admissibility. I would weigh them in favor of exclusion.
I would apply the Harris rule here where the placement of defendant in a lineup followed directly from a Fourth Amendment Payton violation and would find the lineup to be a suppressible fruit of a poisonous tree. But for defendant’s arrest, there would not have been a lineup. The police had obtained photo identifications of defendant and had knowledge of his address three weeks prior to the unlawful arrest. Nothing prevented them from seeking a warrant. They further violated defendant’s rights by placing him in an uncounseled lineup.
Moreover, there is no record support for the suppression court’s determination that the lineup was attenuated from the arrest (see People v Conyers, 68 NY2d 982, 984 [1986]). In determining whether a suppressible fruit is sufficiently attenuated from the taint of the illegality to exempt it from the exclusionary rule, courts must consider three factors: the temporal proximity between the arrest and the statement; any intervening factors that may break the chain of events; and the purpose and nature of the illegal police conduct (see Harris, 77 NY2d at 440-441; Conyers, 68 NY2d at 983).
The fact that defendant’s photo was on file and had been identified by the witnesses prior to the arrest is irrelevant— serving only to identify defendant as a suspect in the two rob *248 beries. Finding that the lineup identification is the result of those previous photographic identifications—establishing probable cause—rather than the Payton violation, fails completely to consider the unlawful arrest and misapprehends the attenuation. The taint from the arrest cannot be attenuated by factors that existed prior to the arrest. Otherwise, suppression of any evidence, including statements, could never be warranted after a Payton violation if the police had probable cause for the arrest. This is clearly not the law, and is in fact the very notion we rejected in Harris. The suppression court here confused an independent source analysis with attenuation. The police had the opportunity to circumvent the attachment of the right to counsel for the purpose of conducting a lineup unencumbered by counsel’s participation, and in fact did so. Neither does the passage of the intervening several hours attenuate the taint of illegality. Nothing happened during that time other than the police calling the witnesses to the precinct and rounding up fillers from a local homeless shelter.
In conclusion, I find a causal relationship between the illegal arrest and the lineup identification. I disagree with the People and the majority that a different rule can be applied to lineups as opposed to custodial interrogations when dealing with right to counsel violations, and that the taint of the Payton violation was attenuated. One purpose of the illegal arrest—indeed, perhaps the only purpose—was clearly to place defendant in a lineup. Here, once the right to counsel attached, defendant had the right to counsel’s presence at the lineup. Finally, there is no support in the record for Supreme Court’s attenuation finding, which was based solely on the previous photo identifications. There was nothing here that cleansed the taint of the warrant-less, nonconsensual seizure of defendant from his home. The lineup evidence acquired as a result of this constitutional violation should have been suppressed. As a result, I would reverse defendant’s conviction and remit for a new trial to be preceded by an independent source hearing.
Judges G.B. Smith, Rosenblatt, Read and R.S. Smith concur with Judge Graffeo; Judge Cipabick dissents and votes to reverse in a separate opinion in which Chief Judge Kaye concurs.
Order affirmed.